**Electronically Filed
Intermediate Court of Appeals
28651
30-SEP-2011
08:55 AM**

NO. 28651

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
DOUGLAS R.M. KALEIKINI, JR., Defendant-Appellant.


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CR. NO. 06-1-0482(1))


SUMMARY DISPOSITION ORDER
(By: Reifurth and Ginoza, JJ.,
with Nakamura, C.J. concurring separately)

Appellant Douglas R.M. Kaleikini, Jr. (Kaleikini) appeals from a Judgment entered on June 13, 2007 by the Circuit Court of the Second Circuit (Circuit Court)[1] convicting him of Robbery in the Second Degree in violation of Hawaii Revised Statutes (HRS) § 708-841 (1993 Repl.).

On appeal, Kaleikini challenges his conviction by raising the following points of error: (1) the Circuit Court committed plain error in giving its jury instructions regarding the offense of robbery in the second degree and regarding accomplice liability; (2) there was insufficient evidence to support Kaleikini's conviction as a principal or an accomplice; and (3) the prosecutor committed prosecutorial misconduct during closing argument.

---

[1] The Honorable Joel E. August presided.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised therein, as well as the relevant statutory and case law, we resolve Kaleikini's points of error as follows:

(1) While the case was before the Circuit Court, Kaleikini did not object to the jury instructions he now challenges on appeal. There is "a presumption that unobjected-to jury instructions are correct[.]" State v. Nichols, 111 Hawaiʻi 327, 337 n.6, 141 P.3d 974, 984 n.6 (2006). "[I]f the appellant overcomes the presumption that the instructions were correctly stated, the rule is that such erroneous instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial." Id. (quoting State v. Eberly, 107 Hawaiʻi 239, 250, 112 P.3d 725, 736 (2005)) (emphasis omitted). Kaleikini does not overcome the presumption that the jury instructions on principal liability and accomplice liability were correct.

The Circuit Court instructed the jury on the elements required to establish that Kaleikini committed robbery in the second degree as a principal and/or accomplice. Kaleikini argues that the Circuit Court erred in instructing the jury that it could convict him as a principal because there was no evidence to support his liability as a principal. As stated in the commentary to HRS § 702-221(1) (1993 Repl.) and recognized by the Hawaiʻi Supreme Court, "[d]istinctions between principals and accessories are dispensed with and a defendant may be convicted directly of an offense committed by another for whose conduct the defendant is accountable." HRS § 702-221, cmt. subsection (1); State v. Apao, 59 Haw. 625, 644, 586 P.2d 250, 262 (1978), superseded by statute on other grounds as acknowledged in Briones v. State, 74 Haw. 442, 456 n.7, 848 P.2d 966, 974 n.7 (1993). The prosecution is not required to elect between charging the defendant as a principal or an accessory. Apao, 59 Haw. at 646,

586 P.2d at 263; see also State v. Fukusaku, 85 Hawai'i 462, 489 n.24, 946 P.2d 32, 59 n.24 (1997). "Regardless of whether an indictment or complaint mentions accomplice or principal liability, the jury can be instructed on the law of principal and accomplice." State v. Yip, 92 Hawai'i 98, 114, 987 P.2d 996, 1012 (App. 1999). The Circuit Court's instruction on the alternative theories of principal and/or accomplice liability was not in error.

Kaleikini argues, secondly, that the instruction on accomplice liability was erroneous because it failed to require a finding by the jury that there was a principal who committed the offense, i.e. a juvenile male involved in the incident (juvenile male) and/or co-defendant Christopher Calibuso (Calibuso). A similar argument was rejected in State v. Keaweehu, 110 Hawai'i 129, 129 P.3d 1157 (App. 2006), where this court reviewed for plain error jury instructions on accomplice liability that were substantially similar to the instructions in the instant case. In Keaweehu, the defendant argued that the instruction erroneously did not require "proof that a principal had engaged in criminal conduct," but this court determined that the instruction "sufficiently advised the jury that the charged offense must have been committed for the defendant to be an accomplice." Id. at 134, 129 P.3d at 1162; see also State v. Churchill, 4 Haw. App. 276, 281-84, 664 P.2d 757, 761-63 (1983).

We are also unconvinced by Kaleikini's other challenges to the jury instructions, and conclude that considering the instructions as a whole, they were not insufficient, erroneous, inconsistent or misleading. Therefore, Kaleikini's points of error regarding the jury instructions on principal and accomplice liability are rejected.

(2) Kaleikini next contends that the State failed to adduce substantial evidence to support his conviction as either a principal or an accomplice in the offense. The State responds that, viewing the evidence in the light most favorable to the State, there is substantial evidence to support Kaleikini's

3

conviction. On appeal, the question is not whether guilt has been established beyond a reasonable doubt, but whether viewing the evidence in the light most favorable to the prosecution there was substantial evidence to support the jury's determination. State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998); State v. Tamura, 63 Haw. 636, 637, 633 P.2d 1115, 1117 (1981). "The jury, as the trier of fact, is the sole judge of the credibility of witnesses or the weight of the evidence." Id. at 637-38, 633 P.2d at 1117 (citations omitted).

Based on our review of the record, we conclude that there was sufficient evidence to support the jury's verdict against Kaleikini. As Kaleikini points out in his opening brief, to prove Kaleikini was an accomplice of either the juvenile male and/or Calibuso, the State had to establish that Kaleikini, with the intention of promoting or facilitating the commission of the offense of robbery, either: (a) solicited the juvenile male and/or Calibuso to commit the offense; or (b) aided or agreed or attempted to aid the other person in planning or committing the offense. Given the evidence in this case, we conclude there was sufficient evidence to support a jury conclusion that Kaleikini, with an intention to promote or facilitate the commission of the offense, either aided or attempted to aid the juvenile male and/or Calibuso in the commission of the offense.

Complaining witness William Blake Gilmore (Gilmore), testified that at the time of the incident he was eighteen years old, about 6'1" tall, and weighed about one hundred fifty to one hundred sixty lbs. As he was returning alone down the trail at 'Īao Valley State Park, he heard rustling behind him and then saw the same four young men he had seen earlier while going up the trail with his family. The four males were coming down the trail at a pretty fast pace, lightly jogging, so Gilmore stepped aside onto the side of the trail. The four males were in two groups of two. Gilmore testified that the first two individuals jogged past him and then the other two were behind him. Initially, Gilmore thought the first two were just going down the trail, but

4

then they "turned around to confront [Gilmore]." Gilmore identified Kaleikini as being "number 2" or one of the two individuals who went past him and then turned around to confront him.

Gilmore testified he was then grabbed from behind by Calibuso, who was "number 4" or one of the two individuals who ended up behind him. According to Gilmore, Calibuso grabbed both of Gilmore's arms around the bicep area and locked Gilmore's arms behind his back. Gilmore testified he was then hit in the face with a closed fist by "number 1" who was identified as the juvenile male. The juvenile male told Gilmore to give his wallet. Gilmore further testified that, when he was being grabbed and while being punched, the other individuals were snickering, "[k]ind of giggling, like there's no way, kind of looking down upon me like a [sic] hopeless." According to Gilmore, Kaleikini was one of the males that was laughing at him when his arms were being held and he was being punched.

Gilmore refused to give his wallet, got free from Calibuso's grasp, ran "through" the juvenile male, and started to run down the trail. Gilmore testified he was then tackled by the juvenile male into a bushy, rocky area on the side of the trail and, while face down, he felt hands stripping things from his pockets. According to Gilmore, as the juvenile male tried to remove Gilmore's wallet, Gilmore took his wallet back and then sprinted down the hill yelling for help. Gilmore testified that when he was about halfway down the hill from where the incident happened, he glanced back and saw that Kaleikini and the juvenile male had continued following him for a little while, but had stopped, likely because Gilmore was yelling loudly.

When asked if he felt that all four individuals were equally guilty, Gilmore testified that he felt "number 3" did not want to be a part of it, "[b]ut the other three, I felt boxed me in a lot, trying to keep me there while the incident was happening." This included Kaleikini. Further, although defense counsel sought to challenge Gilmore based on his statements to

police, when asked if Kaleikini just stood and watched as the robbery occurred, Gilmore responded "no." The jury was also allowed to pose questions to Gilmore, including: "Did number 2 come to witness's defense to try to stop incident? Did he say anything like what are you doing or stop it?" In response, Gilmore testified "no."

Calibuso testified and stated that only the juvenile male touched Gilmore, by punching Gilmore and grabbing Gilmore by the waist. Calibuso further testified that during the incident he did not laugh, but he heard his friends laughing. Calibuso confirmed that Kaleikini was the biggest of the four males in the group at about 6' tall and that the juvenile male was the smallest at about 5'3" or 5'4" and one-hundred twenty lbs. After the incident, Calibuso testified that he and the other three males did not wait for the police, the four of them met at a pond below the parking lot, and then had two friends pick up Kaleikini's truck, which was in the upper parking lot where police had been called.

Based on our review of the record, there was substantial evidence to support the jury's conclusion to convict Kaleikini.

(3) Kaleikini contends that the deputy prosecuting attorney (DPA) committed reversible prosecutorial misconduct due to comments made in closing argument that were designed to appeal to racial prejudice. Kaleikini challenges the following statements by the DPA:

> There are many reasons to commit a robbery. In this case we're aware of two reasons. One, for money; and two, because these defendants believed that Iao Valley is their mountain and that white boy didn't belong there.

> Isolate and outnumber. Four against one. It is the same thing that all predators do.

When considering an allegation of prosecutorial misconduct, an appellate court must decide: (1) whether the conduct was improper; (2) if the conduct was improper, whether the misconduct was harmless beyond a reasonable doubt; and (3) if

6

the misconduct was not harmless, whether the misconduct was so egregious as to bar re-prosecution. State v. Maluia, 107 Hawai'i 20, 26, 108 P.3d 974, 980 (2005).

On the initial question, we conclude the DPA did not design his comments to appeal to racial prejudice, but the DPA's use of the phrase "white boy" in closing argument was not proper to the extent it was attributed to Kaleikini. There was evidence showing that, during a confrontation at the bottom of the trail, Calibuso called Gilmore a "white boy."[2] However, there is no evidence in the record that Kaleikini made a reference to Gilmore's race. Instead, there is evidence that after learning about the incident, Gilmore's father, brother and sister headed back down the trail to find Gilmore when they came upon the four male individuals. During this interaction, there is evidence that Kaleikini made statements to the effect of "this is our mountain, you guys don't belong here and you shouldn't be up here." These statements are relevant to Kaleikini's state of mind, i.e. whether he intended to promote or facilitate the commission of the offense. See State v. Kiakona, 110 Hawai'i 450, 459, 134 P.3d 616, 625 (App. 2006) (prosecutor's references to "turf," "locals" and "haole tourists" was not improper because intent was a central issue in the case). Nonetheless, Kaleikini's statements did not refer to race and there is no evidence to support the DPA's statement that both "defendants believed that . . . white boy" did not belong at 'Īao Valley. See State v. Sanchez, 82 Hawai'i 517, 534, 923 P.2d 934, 951 (App. 1996) ("it would be unprofessional conduct for the

---

[2] Gilmore testified that after the initial altercation on the trail, he and his brother were trying to take pictures of Calibuso and Kaleikini at the bottom of the trail. According to Gilmore:

> Calibuso turned around and took his shirt off and was challenging us to a fight, both of us. Actually, me. He said, come fight me **white boy**, one-on-one. Puts his arm out and said stay off my mountain. I don't know why you **white people** come and try and get on our mountain. We own this place. Go back to where you came from.

(Emphasis added).

prosecutor intentionally to refer to or argue on the basis of facts outside the record.) (internal quotation marks and citation omitted).

Where the alleged conduct is not proper, we consider whether it was harmless beyond a reasonable doubt. Maluia, 107 Hawai'i at 27, 108 P.3d at 981; State v. Rogan, 91 Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999). For this analysis, we consider the nature of the conduct, the promptness of any curative instruction, and the strength or weakness of the evidence against the defendant. Maluia, 107 Hawai'i at 27, 108 P.3d at 981; Rogan, 91 Haw. at 412, 984 P.2d at 1238. Considering these factors, we conclude that the DPA's misconduct in this case was harmless beyond a reasonable doubt.

The nature of the DPA's misconduct was not egregious. The DPA made only one reference to "white boy," there was evidence that co-defendant Calibuso had called Gilmore a "white boy," and the phrase was uttered by the DPA in conjunction with a reference that defendants thought 'Īao Valley was "their mountain," something that Kaleikini said to Gilmore's family members.[3]

There was no curative instruction given by the Circuit Court because the court determined that the DPA's statements were supported by the evidence. However, the Circuit Court did give the following instruction to the jury in the course of providing its other instructions: "Statements or remarks by counsel are not evidence. You should consider their arguments to you, but you are not bound by their recollections or interpretations of the evidence." The Circuit Court further instructed the jury:

> You must not be influenced by pity for a defendant or by passion or prejudiced [sic] against a defendant. Both the prosecution and the defendants have a right to demand,

---

[3] Kaleikini argues that the DPA should not have referred to Kaleikini's remarks because evidence of Kaleikini's hostility against tourists was excluded by a pre-trial ruling. However, Kaleikini did not object when such evidence was adduced at trial on two occasions (during the testimony of Weston Gilmore and Dan Gilmore) and the admission of that evidence is not challenged on appeal.

8

and they do demand and expect, that you will conscientiously and dispassionately consider and weigh all of the evidence and follow these instructions and that you will reach just verdicts.

A jury is presumed to follow the instructions of the court. See State v. Haanio, 94 Hawai'i 405, 415, 16 P.3d 246, 256 (2001); State v. Kupihea, 80 Hawai'i 307, 318, 909 P.2d 1122, 1133 (1996).

As to the strength or weakness of the evidence against Kaleikini, as we concluded above, there is substantial evidence in the record that, with the intention to promote or facilitate the commission of the offense, Kaleikini aided or attempted to aid either the juvenile male or Calibuso in committing the offense.

Therefore, IT IS HEREBY ORDERED that the Judgment entered on June 13, 2007 by the Circuit Court of the Second Circuit is affirmed.

DATED: Honolulu, Hawai'i, September 30, 2011.

On the briefs:

James S. Tabe
Deputy Public Defender
for Defendant-Appellant

Scott K. Hanano
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee

Associate Judge

Associate Judge

9

CONCURRING OPINION BY NAKAMURA, C.J.

I concur separately because I believe that the prosecutor's closing argument was a fair comment on the evidence and was not improper.  Therefore, although I reach the same result as the majority on this issue, I do so based on a different analysis.

In discussing a prosecutor's entitlement to argue and comment on the evidence in closing argument, the Hawai'i Supreme Court has stated:

> [A] prosecutor, during closing argument, is permitted to draw reasonable inferences from the evidence and wide latitude is allowed in discussing the evidence.  Apilando, 79 Hawai'i at 141-42, 900 P.2d at 148 (citing State v. Zamora, 247 Kan. 684, 803 P.2d 568 (1990)) (other citations omitted).  It is also within the bounds of legitimate argument for prosecutors to state, discuss, and comment on the evidence as well as to draw all reasonable inferences from the evidence.  See, e.g., State v. Abeyta, 120 N.M. 233, 901 P.2d 164, 177-78 (1995)("Where the evidence presents two conflicting versions of the same events, 'a party may reasonably infer, and thus, argue, that the other side is lying.' " (Citations omitted.)); Ex parte Waldrop, 459 So.2d 959, 961 (Ala.1984) ("During closing argument, the prosecutor as well as defense counsel has a right to present his [or her] impressions from the evidence, if reasonable[,] and may argue every legitimate inference."); People v. Sutton, 260 Ill.App.3d 949, 197 Ill.Dec. 867, 876, 631 N.E.2d 1326, 1335 (1994) ("The prosecution may base its closing argument on the evidence presented or reasonable inference therefrom, respond to comments by defense counsel which invite or provoke response, denounce the activities of defendant and highlight the inconsistencies in defendant's argument.").

State v. Clark, 83 Hawai'i 289, 304-05, 926 P.2d 194, 209-10 (1996) (some brackets in original).

Defendant-Appellant Douglas R.M. Kaleikini, Jr. (Kaleikini) and co-defendant Christopher Calibuso (Calibuso) were tried together, and so the prosecutor had to make arguments about both Kaleikini and Calibuso in closing argument.  The jury was instructed to "give separate consideration to the evidence applicable to each defendant."

The prosecutor's argument in closing that is challenged as improper was:

> There are many reasons to commit a robbery. In this case we're aware of two reasons. One, for money; and two, <u>because these defendants believed that Iao Valley is their mountain and that white boy didn't belong there</u>.
>
> Isolate and outnumber. Four against one. It is the same thing that all predators do.

(Emphasis added.)

The trial evidence included the following:

1. William Blake Gilmore (Blake), the robbery victim, testified that he was robbed while hiking on a trail in 'Iao Valley State Park by a group of four males that included Kaleikini, Calibuso, a "juvenile male," and another person. The four males blocked Blake's path on the mountain trail, two above and two below Blake. Calibuso locked Blake's arms behind Blake's back, and the juvenile male punched Blake in the mouth and demanded his wallet, while the others, including Kaleikini, were snickering and giggling. Blake escaped and ran down the mountain to seek help. When Blake later confronted Calibuso at the bottom of the trail, Calibuso took off his shirt and challenged Blake to a fight, saying, "come fight me white boy, one-on-one." Calibuso also stated, "stay off my mountain. I don't know why you white people come and try and get on our mountain. We own this place. Go back to where you came from."

2. William Daniel Gilmore (Daniel), Blake's father, testified that after learning that his son had been attacked, Daniel encountered the four males, including Kaleikini, on the trail. Daniel asked the four males whether they were involved or knew who had been involved in the incident with his son. In response, Kaleikini appeared to be offended and said something to the effect of "who do you think you are accusing us of this; and you shouldn't even be up here on our mountain."

3. Weston Gilmore (Weston), Blake's brother, testified that when his father confronted the four males on the

trail, Kaleikini stated, "this is our mountain, you guys don't belong here and you shouldn't be up here."

The evidence showed that Kaleikini and Calibuso shared the same view that ʻĪao Valley was their mountain and that Blake and the other members of the Gilmore family were intruders who should have stayed away. Both Kaleikini and Calibuso stated that ʻĪao Valley is "our" mountain and that Blake and his family did not belong there. In this context, Calibuso referred to Blake as "white boy" and Blake's family as "you white people." The evidence further showed that Kaleikini and Calibuso were long-time friends who had engaged in a concerted action to rob Blake -- the "white boy" -- on the ʻĪao Valley trail.

In my view, the prosecutor's argument that "these defendants believed that Iao Valley is their mountain and that white boy didn't belong there" fell within the wide latitude given to prosecutors to discuss the evidence. It was a fair comment on the evidence based on the prosecutor's impressions from the evidence and reasonable inferences from the evidence. Accordingly, I do not believe that the prosecutor's argument was improper or constituted misconduct. I join in the majority's decision in all other respects.

Craig H. Nakamura